IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DONALD WAYNE UNGER, as Special Administrator and Special Representative of the Estate of James Unger, Deceased<br><br>                Plaintiff,<br><br>vs.<br><br>GRANITE NURSING AND REHABILITATION CENTER, LLC, D&N, LLC, DTD HC, LLC, NORBERT A. BENNETT, and DONALD T. DENZ,<br><br>                Defendants. | Case No. 3:20-CV-805-MAB |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

On July 13, 2020, Plaintiff Donald Wayne Unger, as Special Administrator and Special Representative of the Estate of James Unger, deceased, filed a Complaint in the Circuit Court of Madison County, Illinois against Defendants Granite Nursing and Rehabilitation, LLC, doing business as Granite Nursing and Rehabilitation; D&N, LLC; DTD HC, LLC; Norbert A. Bennett; and Donald T. Denz (Doc. 1-1).

Plaintiff alleges that his father James Unger was a resident at Granite Nursing (Doc. 1-1). Mr. Unger had a Foley catheter, or indwelling catheter, in place to drain urine (*Id.* at p. 23). On July 22, 2018, he was taken by ambulance to the emergency room, where he was diagnosed with a urinary tract infection and sepsis (*Id.* at p. 24). Notes from the emergency room indicated that the Foley catheter was "in bad condition: split and dirty,"

and blood and pus were observed after the catheter was replaced, which indicates the catheter "was obstructed" (*Id.* at pp. 23, 24). Mr. Unger was discharged from the hospital back to the nursing home on July 25th, and he died the next day (*Id.* at p. 24). His death was due, in part, to urosepsis stemming from an infection caused by improper catheter placement and care (*Id.*). Plaintiff filed a ten-count Complaint asserting claims under the Illinois Nursing Home Care Act, 210 ILCS 45/1-101 *et. seq.*, the Illinois Survival Statute, 755 ILCS 5/27-6, and the Illinois Wrongful Death Act, 740 ILCS 180/1 *et seq.* (*Id.*).

Following the removal of this action to this Court (Doc. 1), Defendants D&N, DTD HC, Bennett, and Denz filed a motion to dismiss based on lack of personal jurisdiction on September 13, 2020 (Doc. 13). Twenty-one days later, on September 29, 2020, Plaintiff filed a motion for leave to file an amended complaint (Doc. 29). Defendant Granite Nursing and Rehabilitation filed a response in opposition to Plaintiff's motion (Doc. 30), to which Plaintiff filed a reply (Doc. 32). On October 8, 2020, Plaintiff then filed a response in opposition to the motion to dismiss for lack of personal jurisdiction (Doc. 31), to which Defendants D&N, DTD HC, Bennett, and Denz filed a reply (Doc. 35). Plaintiff then filed a motion to strike Defendants' reply brief (Doc. 36). Defendants filed a response in opposition (Doc. 38), along with a motion for leave to exceed the five-page limit for reply briefs set forth in the Local Rules (Doc. 37).

### PLAINTIFF'S MOTION TO STRIKE REPLY BRIEF (Doc. 36)

The Local Rules provide that "[r]eply briefs are not favored and should be filed only in exceptional circumstances" and shall not exceed five pages. SDIL-LR 7.1(c), (d). Plaintiff filed a motion asking the Court to strike Defendants' reply brief in support of

their motion to dismiss, arguing that no exceptional circumstances exist to justify the reply brief, which also exceeds the five-page limit set by the Local Rules.

Generally speaking, a motion to strike a reply is disfavored just as much, if not more, than the reply itself. That is particularly true here because the motion to strike does not serve to refine the issues or aid in a more expeditious resolution of the case; it only generates another round of briefing that the Court must read and address before it can reach the dispositive motions. *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989); *Ford v. Psychopathic Records, Inc.*, No. 12-CV-0603-MJR-DGW, 2013 WL 3353923, at *6 (S.D. Ill. July 3, 2013). The Court is cognizant of the Local Rule 7.1(c) and capable of recognizing and disregarding an unwarranted reply brief without additional briefing by the parties. Having reviewed the briefing in this matter, the Court finds that there is nothing improper about the content of the reply brief that warrants striking it from the docket. Defendants were simply responding to points that Plaintiff made in his response brief and that Defendants had not previously covered in their motion to dismiss. Additionally, the Court finds it appropriate to grant Defendants' motion for leave to file excess pages (Doc. 37), which moots Plaintiff's argument about the page limit. Accordingly, the motion to strike (Doc. 36) is denied.

### PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT (Doc. 29)

The Court will next address Plaintiff's motion for leave to file an amended complaint because, if granted, it will moot the pending motion to dismiss filed by Defendants D&N, DTD HC, Bennett, and Denz.

Plaintiff wants to amend his complaint in order to add a Defendant: Michelle

Plumb, the former Executive Director of Granite Nursing and Rehabilitation Center (Doc. 29). Granite Nursing filed a response in opposition to the motion (Doc. 30). Granite Nursing first argues that an amendment would be futile because the two-year statute of limitations as to Ms. Plumb has run and the amended complaint does not relate back to the original (Doc. 30, pp. 1, 4–6). Granite Nursing also argues that Plaintiff is attempting to fraudulently join Ms. Plumb in order to destroy diversity jurisdiction and the amendment is thus barred by 28 U.S.C. §1447(e) (*Id.* at pp. 1, 6–8).

Plaintiff's motion to amend was filed 21 days after Defendants D & N, DTD HC, Bennett, and Denz filed their motion to dismiss (*see* Doc. 13). Plaintiff was therefore still within the window of time to amend as a matter of course. FED. R. CIV. P. 15(a)(1) ("A party may amend its pleading once as a matter of course within . . . 21 days after service of a motion under Rule 12(b) . . . ."). And Plaintiff indicated in his motion that he, in fact, wanted to exercise his right to amend as a matter of course (Doc. 29; *see also* Doc. 32).

Normally, a plaintiff seeking to amend as a matter of course simply files the amended complaint; they do not first file a motion asking for leave to amend as a matter of course. However, "the right to amend as a matter of course is not absolute . . . ." *Arlin-Golf, LLC v. Vill. of Arlington Heights*, 631 F.3d 818, 823 (7th Cir. 2011) (quoting *Foster v. DeLuca,* 545 F.3d 582, 584 (7th Cir. 2008). In the Seventh Circuit, a plaintiff cannot add new defendants when amending as a matter of course; rather the plaintiff must seek leave of court before adding a new party, regardless of whether it is within the time frame for amendments as a matter of course. *Moore v. State of Ind.*, 999 F.2d 1125, 1128 (7th Cir. 1993); *Williams v. United States Postal Serv.*, 873 F.2d 1069, 1073 n. 2 (7th Cir. 1989); *Ed

*Miniat, Inc. v. Globe Life Ins. Group, Inc.*, 805 F.2d 732, 736 (7th Cir. 1986). And leave to amend can be denied if the proposed amendment would be futile, amongst other reasons. *Arlin-Golf*, 631 F.3d at 823 (citing *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC,* 499 F.3d 663, 666 (7th Cir. 2007) ("Reasons for finding that leave should not be granted include 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment.'" (emphasis removed))). An amendment may be futile if the claim is barred by the statute of limitations and the amendment does not relate back to the original complaint.[1] Furthermore, if the new defendant is a non-diverse party whose joinder would destroy subject matter jurisdiction, like Ms. Plumb, then the proposed amendment triggers the special provisions of 28 U.S.C. § 1447(e) and the court must determine whether to permit the joinder.[2]

---

[1] *See Rodriguez v. United States*, 286 F.3d 972, 980 (7th Cir. 2002) ("A district court may properly deny a motion to amend as futile if the proposed amendment would be barred by the statute of limitations." (citing *King v. One Unknown Fed. Corr. Officer,* 201 F.3d 910, 914 (7th Cir. 2000)); *King*, 201 F.3d at 914 (holding an amendment would be futile because plaintiff had not satisfied relation back requirements and therefore amendment would be barred by statute of limitations). *See also Joseph v. Elan Motorsports Techs. Racing Corp.*, 638 F.3d 555, 558–59 (7th Cir. 2011) (explaining whether to permit an amendment is a separate question from whether an amendment relates back, and proper course is for judge to allow amendment and then address relation back, but also acknowledging "[i]t is more common, though slightly irregular, for a district court simply to 'deny leave to amend based wholly or partially on [the court's] belief that any amendment would not relate back.'" (quoting *Slayton v. Am. Exp. Co.*, 460 F.3d 215, 226 n.11 (2d Cir. 2006))).

[2] 28 U.S.C. § 1447(e) ("If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court."); *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 759, n.3 (7th Cir. 2009) ("When joinder of a nondiverse party would destroy subject matter jurisdiction, 28 U.S.C. § 1447(e) applies . . . ."). *See also* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, 6 FEDERAL PRACTICE AND PROCEDURE § 1477 (3d ed.) ("[A] party may not employ Rule 15(a) to interpose an amendment that would deprive the district court of jurisdiction over a removed action.").

The Court turns first to whether the amendment is futile because it does not relate back to the original complaint. Plaintiff does not contest that the statute of limitations against Michelle Plumb had expired by the time he sought to add her as a Defendant (*see* Doc. 32). Untimely claims in proposed amendment are not time-barred, however, if they relate back to a complaint filed within the statutory period. *See* FED. R. CIV. P. 15(c). According to Plaintiff, the amendment satisfies the requirements of Rule 15(c)(1)(C) for relation back (Doc. 32, pp. 2–4). Under Rule 15(c)(1)(C), a claim against a newly named defendant relates back if (1) "the amendment changes the party or the naming of the party against whom a claim is asserted," (2) the claim "arose out of the same conduct, transaction, or occurrence set out in the original pleading," and (3) within the period provided by Rule 4(m) for serving the summons and complaint (which is typically 90 days), the newly named defendant received notice of the action and "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." FED. R. CIV. P. 15(c)(1)(B), (C).

Plaintiff has not satisfied the requirements for relation back under Rule 15(c)(1)(C). While Michelle Plumb clearly had notice of the suit within the Rule 4(m) period for service as evidenced by the affidavit she submitted in support of Defendants' motion to dismiss (Doc. 14-3), the Court cannot see why she had any reason to know, or to even suspect, that she would have been named as a Defendant had Plaintiff not "misunderstood a crucial fact about [her] identity." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 550 (2010).

At the time the complaint was filed, Plaintiff's counsel was in possession of James

Unger's medical records and knew the names of many individuals at the nursing home who were involved in Mr. Unger's care (*see* Doc. 1-1, pp. 21–26). Plaintiff's counsel also knew Michelle Plumb was the facility's Executive Director because, as Granite Nursing pointed out, it was public information (Doc. 30, pp. 4–5). And while Plaintiff's counsel might not have been aware of the full extent of Ms. Plumb's duties at Granite Nursing, they were generally aware of the duties of an Executive Director (Administrator) (Doc. 32, p. 4). They must have therefore known that many of the negligent acts described in the original complaint obviously implicated the Executive Director, including for example, the allegations involving the failure to adequately staff the facility, the failure to implement adequate policies and procedures, and the failure to ensure compliance with policies and procedures (*see* Doc. 1-1, pp. 12–13, 23–25). ILL. ADMIN. CODE tit. 77, § 300.330 (defining "administrator" as "the person who is directly responsible for the operation and administration of the facility . . . ."). Yet when Plaintiff's counsel filed the original complaint, they sued only the facility and the facility's owners (*see* Doc. 1-1). They did not sue any individuals. In short, Plaintiff knew of Michelle Plumb's identity and her purported role in Mr. Unger's death, yet did not sue her.

Furthermore, Granite Nursing is vicariously liable for any actions or inactions of their employees regardless of whether those employees are named as individual Defendants in this case. And as another Court explained, "an employee involved in a work-related accident could reasonably believe that a plaintiff chose to sue only the potentially deep-pocketed employer for damages while ignoring the employee." *Haroon v. Talbott*, No. 16-CV-04720, 2017 WL 4280980, at *9 (N.D. Ill. Sept. 27, 2017).

These circumstances taken together compel the conclusion that Plaintiff's failure to name Michelle Plumb as a Defendant in the original complaint was a conscious choice made with full awareness of the potential defendants' identities and roles in Mr. Unger's death and the legal significance of making them parties to this case. This is "the antithesis of making a mistake concerning the proper party's identity." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 549 (2010). And Ms. Plumb could have reasonably and legitimately believed that the limitations period had passed without any attempt to sue her. The requirements of Rule 15(c)(1)(C) are not met here. Thus, relation back is improper and Plaintiff cannot amend under Rule 15(a) to add Ms. Plumb as a Defendant. In light of this conclusion, the Court need not address whether joining Ms. Plumb as a Defendant is permissible under § 1447(e).

## **DEFENDANTS' MOTION TO DISMISS** (Doc. 13)

"[A] complaint need not include facts alleging personal jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). Once a defendant moves to dismiss based on the lack of personal jurisdiction, however, the burden falls on the plaintiff to demonstrate that jurisdiction exists. *Kipp v. Ski Enter. Corp. of Wis.*, 783 F.3d 695, 697 (7th Cir. 2015) (citing *Purdue Research*, 338 F.3d at 782). "The precise nature of the plaintiff's burden depends upon whether an evidentiary hearing has been held." *Purdue Research*, 338 F.3d at 782. When the motion is decided based on the parties' written submissions without an evidentiary hearing, as the Court is doing here, the plaintiff need only establish a *prima facie* case of personal jurisdiction. *Id.* Under the *prima facie* standard, all well-pleaded facts alleged in the complaint are accepted as true,

and any factual disputes in the parties' affidavits are resolved in favor of the plaintiff. *Id.*

A federal court sitting in diversity, like the Court in this case, must "apply the personal jurisdiction rules of the state in which they are located." *Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 912 (7th Cir. 2015) (citing *Hyatt Intern. Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002)). Illinois is the relevant state in this case. The Illinois long-arm statute "permits its courts to exercise personal jurisdiction up to the limits of the Due Process Clause of the Fourteenth Amendment." *Kipp*, 783 F.3d at 697 (citing 735 ILCS 5/2-209(c)). In other words, "normally there is 'no operative difference' between Illinois constitutional and federal constitutional limits on personal jurisdiction." *Philos*, 802 F.3d at 912 (citing *Hyatt,* 302 F.3d at 715). None of the parties has suggested this is anything other than a normal situation or that the state's constitutional standards would differ from federal law in this case (*see* Docs. 13, 31, 35). Consequently, the Court opts to analyze the well-known federal due process limitations on personal jurisdiction for this case.

The Due Process Clause authorizes personal jurisdiction over an out-of-state defendant if the defendant has sufficient minimum contacts with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Philos*, 802 F.3d at 913 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "The defendant must have deliberately established these contacts, or, in other words, he must have purposefully availed himself of the forum state, 'such that he should reasonably anticipate being haled into court there.'" *Philos*, 802 F.3d at 913 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474–75 (1985)).

There are two types of personal jurisdiction: general and specific. *Kipp*, 783 F.3d at

697 (citing *Daimler AG v. Bauman,* 571 U.S. 117, 122 (2014)). Here, Plaintiff indicates that only the latter is relevant (Doc. 31, p. 2). Specific jurisdiction is "conduct-linked jurisdiction," meaning the lawsuit must "result [] from alleged injuries that 'arise out of or relate to' the defendant's contacts with the forum." *Philos*, 802 F.3d at 913 (quoting *Burger King,* 471 U.S. at 472–73).

Defendants submitted affidavits attesting that Granite Nursing and Rehabilitation Center, which is an Illinois LLC, is a long-term skilled nursing and rehabilitation facility located in Madison County, Illinois (Doc. 14-3; Doc. 14-4; Doc. 14-5; Doc. 31-1; Doc. 35-3). DTD HC and D&N each have 50% membership interest in Granite Nursing (Doc. 14-4; Doc. 14-5).[3] DTD and D&N are both New York limited liability companies with their principal places of business in New York (Doc. 14-4; Doc. 14-5). The majority member of DTD HC is Donald Denz, who lives and works in Erie County, New York (Doc. 14-4). The majority member of D&N is Norbert Bennett, who also lives and works in Erie County, New York (Doc. 14-5).

Denz and Bennett attested that they do not control or manage the daily operations at Granite Nursing (Doc. 14-4, Doc. 14-5). For example, they have nothing to do with providing, managing, and/or overseeing resident care, the staff, or the financials of the facility (Doc. 14-4, Doc. 14-5). Nor are they members of Granite Nursing's governing body (Doc. 14-4, Doc. 14-5). Denz and Bennett further attested that DTD HC and D&N are not management companies and are not involved in the management of Granite Nursing

---

[3] In fact, DTD and D&N co-own "more than 30 stand-alone limited liability companies which operate nursing homes around the country" (Doc. 14-4, Doc. 14-5).

(Doc. 14-4, Doc. 14-5). DTD HC and D&N do not have daily contact with Granite Nursing and do not, for example, conduct on-site visits or provide any oversight regarding resident care, contract negotiations, purchasing, capital improvements, employee and resident safety, and/or human resources (Doc. 14-4, Doc. 14-5). Rather, the Executive Director of Granite Nursing is, was, and will continue to be responsible for the day-to-day management and operations of the facility, including oversight of hiring, training, and supervising the facility's staff; adopting and enforcing policies and procedures for the facility; managing the facility's finances; and overseeing the quality of care provided to residents (Doc. 14-3, Doc. 14-4, Doc. 14-5).

In response, Plaintiff notes that although Defendants DTD HC, D&N, Denz, and Bennett disclaim any participation in the myriad decisions involved in running a nursing home, they *must* have hired the Executive Director (Doc. 31, pp. 4, 5, 6, 7). Notably, Plaintiff did not submit any affidavits or other evidence to support his assertion (*see* Doc. 31). And Defendants point out that federal regulations require the facility's governing body to hire the Executive Directory, and both Mr. Denz and Mr. Bennett attested that they were not members of Granite Nursing's governing body (Doc. 35, p. 3 (citing 42 C.F.R. § 483.70(d)(2)); Doc. 14-4; Doc. 14-5). Plaintiff further speculates that Defendants "have the ability to cease operations of the business at any time they deem fit," to terminate their Executive Director, to hire a new Executive Director, to institute a corporate name change, and to make any "other number of executive [decisions]." (Doc. 31, pp. 4–5). But, again, Plaintiff did not submit any evidence that any of these hypothetical events ever occurred, nor did he explain how these events gave rise to or

were related to the claims at hand (*see* Doc. 31).

The evidence before the Court shows that DTD HC, D&N, Denz, and Bennett merely had an ownership interest in Granite Nursing and Rehabilitation, LLC. But membership in an LLC is not sufficient in and of itself to establish personal jurisdiction. *Cf. Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943 (7th Cir. 2000) ("[P]ersonal jurisdiction cannot be premised on corporate affiliation or stock ownership alone where corporate formalities are substantially observed and the parent does not exercise an unusually high degree of control over the subsidiary.").[4] Rather, the individual members must have their own minimum contacts with the forum state; the LLC's activities cannot be imputed to its members if they are separate entities. *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 781 n.13 (1984) ("Each defendant's contacts with the forum State must be assessed individually."); *Reimer Express*, 230 F.3d at 944 ("The unilateral activity of an entity cannot subject a nonresident defendant to personal jurisdiction in the entity's forum."). Here, the Defendants have attested that they were not involved in the management or operation of the nursing home, and Plaintiff has not set forth any evidence to the contrary.

Plaintiff also argues that this Court should subject DTD HC, D&N, Denz, and

---

[4] *See also Graymore, LLC v. Gray*, No. 06–C–00638, 2007 WL 1059004, at *8 (D. Colo. April 6, 2007) (holding that because "LLCs expressly protect members from liability for company obligations," it follows that "personal jurisdiction over a LLC does not automatically extend to its members."); *Mountain Funding, LLC v. Blackwater Crossing, LLC*, No. 3:05 CV 513 MU, 2006 WL 1582403, at *2 (W.D.N.C. June 5, 2006) ("Personal jurisdiction over a limited liability company does not automatically extend to its members."); *see also Apex Energy Grp. LLC v. Schweihs*, No. 1:15-CV-00438-JMS, 2015 WL 5613375, at *4 (S.D. Ind. Sept. 23, 2015) (finding no personal jurisdiction over individual defendant who was majority owner of a Virginia LLC, which in turn had a majority ownership interest in the Indiana LLC that was the plaintiff's competitor).

Bennett to personal jurisdiction because they may earn profits (or sustain losses) from Granite (Doc. 31, p. 7). Plaintiff did not, however, cite to any authority to support his argument (*see id.*). *But cf. Reimer Express*, 230 F.3d at 944 ("[S]tock ownership . . . without more, is not a sufficient minimum contact."). *See also* David F. Herr and Steven Baicker-McKee, *Personal Jurisdiction—Limited Liability Company Members*, FEDERAL LITIGATOR, January 2015, *available at* Westlaw citation 30 No. 1 Fed. Litigator NL 4 ("[I]n the context of an LLC, while income may flow through to the members, personal jurisdiction does not.")

For these reasons, Plaintiff has failed to establish a *prima facie* case of personal jurisdiction over DTD HC, D&N, Denz, and Bennett based on minimum contacts.

Plaintiff next argues that personal jurisdiction over DTD HC, D&N, Denz, and Bennett can be found based on the Illinois Nursing Home Care Act (Doc. 31, pp. 8–12). Specifically, the Act provides that both the owner and the licensee are liable for negligent treatment or abuse of a resident of a nursing home. Granite Nursing is the licensee and DTD HC, D&N, Denz, and Bennett. Therefore, according to Plaintiff, the allegations of negligence in the complaint against Defendants constitute "[t]he commission of a tortious act within the State," as contemplated by the Illinois Long-Ar[m] Statute" and the Court consequently has personal jurisdiction over them (*Id.* at p. 11). This argument is a non-starter. "[J]urisdiction and liability are two separate inquiries. The fact that a defendant would be liable under a statute if personal jurisdiction over it could be obtained is irrelevant to the question of whether such jurisdiction can be exercised." *Reimer Express*, 230 F.3d at 944.

Plaintiff's final argument is that personal jurisdiction over DTD HC, D&N, Denz, and Bennett can be found based on the provision of the Illinois Long-Arm Statute that provides for jurisdiction over a defendant for acts involving "[t]he acquisition of ownership, possession or control of any asset or thing of value present within this State when ownership, possession or control was acquired." (Doc. 31, p. 12); 735 ILCS 5/2-209(a)(10). Plaintiff argues that Granite Nursing facility was "acquired" by Defendants in October 2004 (Doc. 31, p. 12).[5] Nothing in the complaint, however, even remotely suggests that Plaintiff's claims arose from Defendants' "acquisition" of the nursing home (*see* Doc. 1). 735 ILCS 5/2-209(a)(10) (permitting a court to exercise personal jurisdiction over an individual for "any cause of action arising from" the transfer of property in Illinois); *Kipp*, 783 F.3d at 698 ("Specific jurisdiction is case-specific; the claim must be linked to the activities or contacts with the forum.") (citation omitted). Rather, Plaintiff's claims arose from negligence of the nursing home's staff over ten years after Defendants' "acquired" the facility.

For these reasons, the Court finds Plaintiff has not made a *prima facie* showing of personal jurisdiction over Defendants DTD HC, D&N, Denz, and Bennett. Their motion to dismiss is granted.

## CONCLUSION

Defendants' motion for leave to file excess pages (Doc. 37) is **GRANTED**.

---

[5] Defendants counter that they did not "acquire" Granite Nursing and Rehabilitation Center in October 2004 but rather the LLC was "formed as a separate and legally distinct entity on that date" (Doc. 35, p. 5). The Court is hesitant to rely on this argument without knowing the prior history of the facility, *e.g.*, was it an existing facility that Defendants purchased?

Plaintiff's motion to strike reply brief (Doc. 36) is **DENIED**. Defendants reply brief in support of their motion to dismiss (Doc. 35) is accepted as filed.

Plaintiff's motion to amend the complaint (Doc. 29) is **DENIED**.

Defendants DTD HC, LLC, D&N, LLC, Donald Denz, and Norbert Bennett's motion to dismiss for lack of personal jurisdiction (Doc. 13) is **GRANTED**. These Defendants are **DISMISSED without prejudice.**

IT IS SO ORDERED.

DATED: April 23, 2021

                                            s/ Mark A. Beatty  
                                            **MARK A. BEATTY**  
                                            **United States Magistrate Judge**